UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HERZOFF and
MOLLY HERZOFF,

                Plaintiffs,

v.

CITIMORTGAGE, INC.,

                Defendant.
_____/

Case No. 12-15210
Hon. Lawrence P. Zatkoff

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 22, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss [dkt 3]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendant's Motion is GRANTED and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

## II. BACKGROUND

**A. FACTUAL BACKGROUND**

This is a foreclosure case involving real property located at 3642 Ridgeland Court, West Bloomfield, Michigan, 48323 ("Property"). On April 4, 2003, Plaintiffs received a loan in the amount of $387,000.00 (the "Loan") from lender, ABN AMRO Mortgage Group, Inc ("ABN AMRO"). At

closing, Plaintiffs executed a note (the "Note") and, to secure repayment of the Loan, granted a mortgage interest in the Property (the "Mortgage") to ABN AMRO. The Mortgage was recorded with the Oakland County Register of Deeds on June 12, 2003. According to the terms of the Mortgage, if Plaintiffs failed to make the required payments under the Note, the lender and the lender's successors and assigns could commence foreclosure proceedings against the Property. Defendant CitiMortgage Inc. ("CMI") is successor in interest by reason of merger to ABN AMRO.

Plaintiffs subsequently defaulted on their Loan. According to Plaintiffs, on or about August 3, 2010, they requested a loan modification from CMI and started the process by submitting a mortgage assistance application. On August 17, 2010, a representative of CMI sent Plaintiffs correspondence seeking additional financial information. Thereafter, on August 25, 2010, Plaintiffs received the following e-mail from CMI:

> STATUS as of 08/24/2010
>
> Your mortgage assistance request has been approved. Expect your mortgage solution package within the next 5–7 business days.
>
> You may also track the status of your request by signing on to your account at www.citimortgage.com.
>
> We appreciate your patience during this time and look forward to helping you find a mortgage solution to manage your financial needs.
>
> Sincerely,
> CitiMortgage

Dkt. 5, ex. B. Plaintiffs state this email constituted CMI's agreement or promise, in writing, to modify the Loan.

From September 8, 2010, to December 27, 2011, Plaintiffs had myriad telephone conversations with representatives from CMI in which alleged promises, confirmations, or reiterations were verbalized that the Loan would be, or had been, modified. Also during those dates, Plaintiffs—upon notice from

2

CMI's foreclosure counsel (Orlans Associates) that Plaintiffs were in default of their Loan—requested a meeting pursuant to Mich. Comp. Laws § 600.3205a with Orlans Associates "to attempt to work out a modification of the mortgage [L]oan to avoid foreclosure." Plaintiffs met with Orlans Associates on August 16 and 30, 2011, yet "nothing was resolved" in either meeting. On December 27, 2011, Plaintiffs received a letter from Orlans Associates indicating that CMI denied their request for modification.

**B. PROCEDURAL BACKGROUND**

Plaintiffs filed their Complaint on October 10, 2012, in Oakland County Circuit Court. On or about October 30, 2012, CMI received copies of Plaintiffs' Summons and Complaint. On November 27, 2012, CMI timely removed the matter to this Court on the basis of diversity jurisdiction.

In their Complaint, Plaintiffs allege claims against CMI for breach of contract (Count I), promissory estoppel (Count II), specific performance (Count III), fraud and misrepresentation (Count IV), silent fraud (Count V),[1] injunction (Count VI), and violation of Mich. Comp. Laws § 600.3204 (Count VII). On December 26, 2012, CMI filed the instant motion.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual

---

[1] Plaintiffs appear to be alleging violations of Michigan's foreclosure statutes in Count V.

3

content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

### A. COUNT I -- BREACH OF CONTRACT; COUNT III – SPECIFIC PERFORMANCE

In Counts I and III, Plaintiffs allege that "[i]n breach of the Agreement between the parties, [CMI] has failed and refused to substantially lower Plaintiffs' monthly mortgage payment and to provide them with the final paperwork for their mortgage loan modification Agreement," and that they "are entitled to specific performance requiring [CMI] to issue the long promised mortgage loan modification documents . . . ." Dkt. 1, Ex. A, at ¶¶ 94, 107. Both claims are based on the theory that the August 25, 2010, email ("the Email") constituted a binding contract wherein CMI agreed to modify the terms of Plaintiffs' Loan. The Court is not persuaded by this argument.

Markedly absent from the Email is mention of the word "modification"—or various versions thereof. Nor does the Email memorialize any modified Loan and/or mortgage terms or conditions, such as a modified payment amount and/or interest rate. *See Eerdmans v. Maki*, 226 Mich. App. 360, 364 (1997) ("A valid contract requires mutual assent on all essential terms."). The Email only indicates that Plaintiffs' "mortgage assistance request has been approved" and that Plaintiffs should expect their "mortgage solution package within the next 5–7 business days." As noted by CMI, this "mortgage solution package" contains forms that need to be completed by a borrower—like Plaintiffs—seeking mortgage assistance due to economic hardship. These forms would then be used by CMI to evaluate

4

whether Plaintiffs qualify for any modification options. Any attempt by Plaintiffs to characterize the Email as a contract, or "agreement," is not well-taken and is further belied by the Email's closing sentence: "We appreciate your patience during this time and *look forward* to helping you find a mortgage solution to manage your financial needs."[2] Therefore, as of August 25, 2010, it appears that any negotiations regarding modification of Plaintiffs' Loan would be an on-going process. As such, the Court is unable to find that the Email is a contract or agreement to modify Plaintiffs' Loan. Plaintiffs' claims must fail.

## B. COUNT II – PROMISSORY ESTOPPEL; COUNT IV – FRAUD/MISREPRESENTATION

Counts II and IV of Plaintiffs' Complaint are grounded on CMI's alleged oral promises or assurances made to Plaintiffs. Plaintiffs allege as follows: that CMI made numerous representations to Plaintiffs that it had agreed to modify their Loan; that CMI would send Plaintiffs the documents exemplifying that the modification was approved; and that Plaintiffs relied on these false statements and misrepresentations by refraining from making certain mortgage payments. Michigan's statute of frauds, however, precludes such claims.

The Statute of Frauds states as follows:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution *unless* the promise or commitment *is in writing and signed* with an authorized signature by the financial institution:

> (a) *a promise* or commitment to lend money, grant or extend credit, or make *any other financial accommodation*;
>
> (b) *a promise* or commitment to renew, extend, *modify*, or permit a delay in repayment or *performance of a loan*, extension of credit, or other financial accommodation.

---

[2] In addition to the language of the Email, the following documents attached to Plaintiffs' Complaint confirm that an agreement to modify Plaintiffs' Loan was *not* entered into on August 25, 2010: (1) a letter dated April 11, 2011, from Orlans Associates to Plaintiffs stating, among other things, that Plaintiffs could request a meeting to "work out" a modification of their Loan; (2) a letter dated August 3, 2011, from Orlans Associates to Plaintiffs confirming that Plaintiffs requested a meeting with CMI to discuss modification options; and (3) a letter dated December 27, 2011, from Orlans Associates to Plaintiffs notifying Plaintiffs that CMI denied their request for a modification.

> (c) *a promise or commitment to waive a provision of a loan*, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2) (emphasis added). According to the unambiguous language of the statute, a party is precluded from bringing a claim—"no matter its label"—to enforce a financial institution's alleged promise that is not supported by a written document signed by an authorized representative of the institution. *See Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550 (2000).

Here, Plaintiffs' promissory estoppel and fraud/misrepresentation claims relate to alleged *oral* promises and representations that are not contained in any written document signed by CMI's authorized representatives. *See Helmus v. Chase Home Finance, LLC*, 890 F. Supp. 2d 806, 813 (W.D. Mich. 2012) (rejecting the contention that a document signed "Sincerely, CHASE HOME FINANCE LLC" was sufficient to satisfy the requirement of an "authorized signature" under Michigan's statute of frauds). Thus, these claims are barred by Mich. Comp. Laws § 556.132(2) and fail as a matter of law.

## C. COUNT V – SILENT FRAUD;[3] COUNT VII – VIOLATION OF MICH. COMP. LAWS § 600.3204

Plaintiffs assert, rather incoherently, that CMI violated Michigan's foreclosure statutes in a multitude of ways. Even construing the Complaint in the light most favorable to Plaintiffs, these claims are likewise deficient and must be dismissed.

First, Plaintiffs allege that CMI violated Mich. Comp. Laws § 600.3208 by failing "to properly post any notice of foreclosure on the Plaintiffs' property." Dkt. 1, Ex. A, ¶ 121. Under Michigan law, notice of a mortgage foreclosure must be published in a newspaper for four successive weeks and "shall be posted in a conspicuous place upon any part of the premises described in the notice" within 15 days after the first publication of the notice. Mich. Comp. Laws § 600.3208. A party challenging the sufficiency of the posting has the burden of proof. *Cox v. Townsend*, 90 Mich. App. 12, 15 (1979).

---

[3] *See* note 1, *supra*.

Personal or actual notice is not required. *Moss v. Keary*, 231 Mich. 295, 299 (1925). Any facially proper service requires a considerable showing of proof before it may be set aside, and bare denials of service are insufficient. *Prentice v. Bank of New York Trust Co., NA*, 2009 WL 1139332, *3 (Mich. App. 2009) (citing *Delph v. Smith*, 354 Mich. 12, 16-18 (1958)). A failure to observe the posting does not, by itself, contradict evidence that the notice was properly posted. *Grech v. American Home Mortgage Servicing*, 2010 WL 3767609, *1 (Mich. App. 2010).

In their Complaint, Plaintiffs essentially argue that CMI violated § 3208 by failing to "conspicuously" affix the notice of foreclosure on any part of their premises. It was not until "weeks later," Plaintiffs claim, that the notice "was found in the bushes outside of [their] home."

Remarkably, CMI, instead of addressing that contention, focuses on the *other aspect* of the statute in its motion and asserts that "[s]ection 3208 simply requires that a foreclosure notice be published for 4 consecutive weeks . . . in a newspaper[,]" and that CMI complied with the statute by doing so. Dkt. 3, p. 7–8 (internal quotations omitted). Equally as remarkable, Plaintiffs then failed to address § 3208 in any capacity whatsoever in response to Defendant's motion, presumably conceding the merits of any relief under that statute.

Nonetheless, the Court has a duty to construe the Complaint in a light most favorable to Plaintiffs and will accept as true that Plaintiffs did not see the foreclosure notice until "weeks after" January 6, 2013—the date on which publication in the newspaper first occurred. Yet, Plaintiffs' defective notice claim still is unavailing for the following reason: the foreclosure sale on Plaintiffs' Property never took place. The resulting remedy for defective notice under § 3208 is a "voidable" foreclosure sale. *See Jackson Investment Corp. v. Pittsfield Products, Inc.*, 162 Mich. App. 750, 755 (1987). Thus, even assuming there was defective notice, Plaintiffs' desire for relief under this statute is a moot point—there is nothing to render "voidable," and Plaintiffs thus suffered no prejudice. *See Lessl v. CitiMortgage, Inc.*, —

7

Fed. App'x —, No. 11–2285, 2013 WL 610904 (6th Cir. Feb. 19, 2013) (explaining that notice defects under Mich. Comp. Laws § 600.3208 are actionable only upon a showing of prejudice). Accordingly, the Court dismisses Plaintiffs' defective notice claim.

Next, Plaintiffs generally claim that CMI violated Mich. Comp. Laws § 600.3204(4), which prescribes the circumstances when a party may, or may not, foreclose by advertisement. Although Plaintiffs' Complaint fails to focus on *specific* subsections of this statute, the Court is able to discern that Plaintiffs are alleging violations of § 3204(4)(c) and (e).

Plaintiffs first claim that CMI initiated foreclosure by advertisement "before 90 days had expired contrary to [Mich. Comp. Laws §] 600.3204 and [CMI's] own letter." Dkt. 1, Ex. A, at ¶ 119. Pursuant to § 3204(4)(c), so long as a defaulting party requests a meeting with the lender or its designate within 30 days after receiving written notice of potential foreclosure proceedings, the lender may not commence such foreclosure until 90 days after the written notice was mailed. To support their claim, Plaintiffs attached two documents to their Complaint: (1) the "written notice" dated April 11, 2011, from Orlans Associates that states foreclosure proceedings would be stayed until July 10, 2011 (*i.e.* 90 days); and (2) Plaintiff Michael Herzoff's August 19, 2011, credit report from Equifax that states under the comments section that "[f]oreclosure process started."

Thus, Plaintiff theorizes, CMI reinitiated foreclosure proceedings by at least August 19, 2011 (the date of the credit report), and possibly earlier. Yet, this argument is fatally flawed for two reasons. Initially, Plaintiffs are unable to offer to this Court an estimated date on which CMI allegedly re-commenced foreclosure proceedings. Taking Plaintiffs' argument at face value, there is a gap of approximately 40 days between July 10 (the expiration date of the foreclosure stay) and August 19, 2011 (the credit report date), in which Defendant CMI could likely have restarted foreclosure proceedings *without violating* § 3204(4)(c). Accordingly, Plaintiffs' claim amounts to little more than speculation.

*See Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

Most telling, however, is the fact that Plaintiffs' Complaint is devoid of any allegations that CMI, in fact, took actions which "reinitiated"[4] foreclosure proceedings during the 90-day stay. For example, Plaintiffs do not claim that CMI published the foreclosure notice via newspaper during the stay—an action likely characterized as re-commencement of foreclosure proceedings.[5] Nor do Plaintiffs allege any other discernable signs that indicate CMI was actively processing the foreclosure of their Property at that time. The sole reference to the August 19, 2011, credit report—which in relevant substance reads: "Foreclosure process started"—with nothing more, carries no persuasive value. Moreover, Plaintiffs' allegations reveal that until they received notice on December 27, 2011, that their request for modification had been denied, the parties were actively negotiating potential modification options—hardly an indication CMI "quietly reinstated" foreclosure proceedings during the stay. Consequently, Plaintiffs' claim that CMI violated § 3204(4)(c) is dismissed.

Relatedly, Plaintiffs also claim that CMI violated Mich. Comp. Laws § 600.3204(4)(e) by "initiat[ing] foreclosure proceedings . . . prior to the dates when the meetings occurred . . . ." Dkt. 1, Ex. A, at ¶ 138. This claim similarly misses the point. First, because Plaintiffs were in default on their Loan, CMI undoubtedly was permitted to initially commence foreclosure proceedings. When Plaintiffs requested a meeting on April 14, 2011, to work out a modification of their Loan, the 90-day ban of

---

[4] The foreclosure process arguably starts or "commences"—as with any case—with the mailing of the foreclosure notice letter pursuant to Mich. Comp. Laws § 600.3205a. Here, Orlans Associates mailed the foreclosure notice letter to Plaintiffs on April 11, 2011. Plaintiffs then complied with the statute and requested a meeting on April 14, 2011, thereby triggering application of the 90-day stay of proceedings. Thus, because Plaintiffs acknowledge that they defaulted on the Loan, Plaintiffs do not—and cannot—seriously contend that Defendant CMI had no right to initially commence foreclosure proceedings. So, for purposes of this Opinion, the Court presumes that Plaintiffs are arguing that Defendant CMI violated § 3204(4) by re-commencing or re-initiating foreclosure proceedings after they requested the meeting, which invoked the 90-day stay.

[5] In fact, Plaintiffs concede that Defendant CMI did not publish the notice of foreclosure until January 6, 2012.

9

foreclosure proceedings began. Thus, from April 14, 2011, until a time at which the parties could conduct the modification meeting, CMI was precluded from actively taking steps to foreclose on the Property. Plaintiffs' claim that CMI commenced "foreclosure proceedings prior to meeting and negotiating with Plaintiffs" lacks merit insofar as Plaintiffs are, as previously mentioned, unable to highlight any actions undertaken by CMI—from April 14, 2011, until the meeting(s)—which evidence active foreclosure. As such, Plaintiffs have failed to plead sufficient facts showing that CMI violated Mich. Comp. Laws § 600.3204(4)(e), and their claim must fail.

Last, Plaintiffs vaguely assert a violation of Mich. Comp. Laws § 600.3205c. Their argument on this contention states—in its entirety—that "if a borrower is eligible for a modification but the mortgage holder does not offer one, the mortgage holder may not foreclosure by advertisement." Dkt. 1, Ex. A, at ¶ 135. It appears Plaintiffs are claiming that they are entitled to convert the foreclosure by advertisement into a judicial foreclosure under § 3205c. The Court disagrees.

Section 3205c provides in relevant part:

> If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, *and the borrower is eligible for modification* . . . the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31.

Mich. Comp. Laws § 600.3205c(8) (emphasis added). Plaintiffs cannot convert the action to a judicial foreclosure because they were not eligible for a loan modification, as the December 27, 2011, letter from CMI indicated. Although Plaintiffs make the unsupported claim that they were, in fact, qualified for a modification, they provide no alternative calculation showing that their income was sufficient to warrant a

10

modification under the statutory guidelines. Plaintiffs' bare assertions to the contrary are insufficient to sustain their claim.[6]

### D. COUNT VI – INJUNCTION

In Count VI, Plaintiffs attempt to "claim" injunctive relief. An injunction, however, is a form of relief, not a cause of action. *See Terlecki v. Stewarti,* 278 Mich. App. 644, 663, (2008) ("[I]t is well settled that an injunction is an equitable remedy, not an independent cause of action"). Nevertheless, all of Plaintiffs' claims for which relief may have been granted fail as a matter of law. Plaintiffs are therefore not entitled to injunctive, or other, relief.

### V. CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendants' Motion to Dismiss [dkt 8] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

    s/Lawrence P. Zatkoff
    HON. LAWRENCE P. ZATKOFF
    U.S. DISTRICT JUDGE

DATED: JULY 22, 2013

---

[6] Plaintiffs, in their response brief, also assert violations of Mich. Comp. Law §§ 600.3204(4)(a) and (f) and 600.3205a. Yet, Plaintiffs completely failed to plead facts supporting those alleged violations in their Complaint. *See, e.g.*, *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (explaining that the court primarily considers allegations in the complaint when considering a Rule 12(b)(6) motion). As such, the Court will not consider these claims.